IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DON L. JEFFERSON,

    Plaintiff,                    No. CIV S-06-0299 JAM DAD P

    vs.

DEPUTY ROWE, et al.,

    Defendant.                 FINDINGS AND RECOMMENDATIONS

_____/

        Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking relief under 42 U.S.C. § 1983. Pending before the court is a motion for summary judgment brought on behalf of defendants Frank, Millican, Ponce, Ramos, and Rowe pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has filed an opposition to the motion, and defendants have filed a reply.

**BACKGROUND**

        Plaintiff is proceeding on his second amended complaint. Therein, he alleges as follows. On January 3, 2006, plaintiff was an inmate at the Sacramento County Main Jail. After his cellmate Andre Winn assaulted him, plaintiff told deputies that he did not want to be housed in the same pod as Winn. Inmate Winn subsequently transferred to another floor. However, Winn later moved back to plaintiff's pod and assaulted him a second time. According to

1

plaintiff, defendants Frank, Millican, Ponce, Ramos, and Rowe were assigned to security and safety when inmate Winn assaulted him the second time.  Plaintiff claims that defendants have violated his rights under the Eighth Amendment.  He requests damages, injunctive relief, and declaratory judgment.  (Sec. Am. Compl. at 3.)

## SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©.

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56©).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56©, is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On January 12, 2007, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

**OTHER APPLICABLE LEGAL STANDARDS**

I. Civil Rights Act Pursuant to 42 U.S.C. § 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

II.  Eighth Amendment and Failure to Protect Claims

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII.  The "unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment prohibited by the United States Constitution.  Whitley v. Albers, 475 U.S. 312, 319 (1986).  See also Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).  Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley, 475 U.S. at 319.

What is needed to show unnecessary and wanton infliction of pain "varies according to the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citing Whitley, 475 U.S. at 320).  It is well established that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994).  "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offense against society.'" Id. at 834.  However, prison officials do not incur constitutional liability for every injury suffered by a prisoner at the hands of another prisoner.  Id.

To prevail on such a claim the plaintiff must show that objectively he suffered a "sufficiently serious" deprivation.  Farmer, 511 U.S. at 834; Wilson v. Seiter, 501 U.S. 294, 298-99 (1991).  The plaintiff must also show that subjectively each defendant had a culpable state of mind in allowing or causing the plaintiff's deprivation to occur.  Farmer, 511 U.S. at 834.  In this regard, a prison official violates the Eighth Amendment "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847.  Under this standard, a prison official must have a "sufficiently culpable state of mind," one of deliberate indifference to the inmate's health or safety.  Id.

/////

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I. <u>Defendants' Statement of Undisputed Facts and Evidence</u>

Defendants' statement of undisputed facts is supported by citations to the declarations of defendants Frank, Millican, Ponce, Ramos, and Rowe as well as by citations to a declaration by defense counsel Pappone and the allegations of plaintiff's second amended complaint.

The evidence submitted by the defendants establishes the following. In January and February of 2006, plaintiff was an inmate at the Sacramento County Main Jail. In January of 2006, plaintiff shared a cell with inmate Winn on the third floor of the jail. On January 3, 2006, at approximately 10:30 p.m., inmate Winn hit plaintiff one time on his right ear. At the time of the incident, plaintiff declined medical care and did not wish to press charges against inmate Winn. The following morning, at approximately 12:30 a.m., Investigating Officer Wall completed a crime report and transferred inmate Winn to another floor of the jail. (Defs.' SUDF 1-4, Millican Decl. & Exs. A-C, K-M, Pl.'s Sec. Am. Compl.)

On January 8, 2006, plaintiff filed an inmate grievance requesting medical care and claiming that he had injuries to his upper head and neck as a result of the altercation with inmate Winn. On the same day, jail personnel responded to the grievance and scheduled plaintiff for sick call. According to plaintiff's medical records, medical staff at Correctional Health Services saw plaintiff on January 9, 2006, and again on January 11, 2006. (Defs.' SUDF 5-7, Millican Decl. & Ex. K, Pappone Decl. & Ex. B.)

On January 11, 2006, plaintiff appealed the jail personnel's response to his grievance. However, there is no evidence that plaintiff sent his appeal to the Facility Commander as the appeal form required. In his appeal, plaintiff complained about the $3.00 charge for his medical visit on January 9, 2006, and requested an immediate refund. On January 17, 2006, Correctional Health Services responded to his appeal and denied his request for a

/////

refund. Plaintiff did not file any additional grievances regarding his altercation with inmate Winn. (Defs.' SUDF 8-11, Millican Decl. & Ex. K, Pappone Decl. & Ex. A.)

On February 3, 2006, inmate Winn returned to the third floor of the jail. On February 5, 2006, at approximately 3:20 p.m., inmate Winn hit plaintiff again while they were in the day room. Defendant Rowe was on duty in the control booth at the time and witnessed the altercation. He called for officers to respond to the incident and subsequently completed an incident report that accurately reflects the events as he observed them on that date. Under department policy and practice, officers who respond to an incident and who interview the individuals involved in the incident are to report their findings to the control officer, including any requests for medical care and whether or not any individuals wished to press chargers. The responding deputies in this instance reported to defendant Rowe that both plaintiff and inmate Winn declined medical attention and did not wish to press charges against the other. (Defs.' SUDF 12-25, 47, Millican Decl. & Exs. D, L, M, Rowe Decl. & Ex. A, Pl.'s Sec. Am. Compl.)

Prior to February 5, 2006, defendant Rowe had no knowledge of any altercations between plaintiff and inmate Winn. In addition, he had no knowledge of whether inmate Winn had previously caused plaintiff or any other prisoner bodily harm. Defendant Rowe also had not made any housing or classification decisions, implemented any housing or classification changes, or have knowledge thereof, regarding either plaintiff or inmate Winn. (Defs.' SUDF 26-27, Rowe Decl. & Ex. A.)

In January and February of 2006, defendant Frank was assigned to the seventh floor of the jail. Defendant Frank was not assigned to the third floor where both plaintiff and inmate Winn were housed. On February 5, 2006, defendant Frank responded to defendant Rowe's call for officer assistance. When defendant Frank arrived on the third floor, other officers were present and controlling the situation between plaintiff and inmate Winn, so defendant Frank stood by. Shortly thereafter, she returned to her assignment because her assistance was unnecessary. (Defs.' SUDF 28-30, Frank Decl.)

1  Prior to February 5, 2006, defendant Frank had no knowledge of plaintiff or
2 inmate Winn.  In addition, defendant Frank had no knowledge of any altercations between
3 plaintiff and inmate Winn or whether inmate Winn had previously caused plaintiff or any other
4 prisoner bodily harm.  Defendant Frank also had not made any housing or classification
5 decisions, implemented any housing or classification changes, or have knowledge thereof,
6 regarding either plaintiff or inmate Winn.  (Defs.' SUDF 31-32, Frank Decl.)
7  In January and February of 2006, defendant Ponce was assigned as a floor
8 sergeant on the sixth, seventh, and eighth floors of the jail.  Defendant Ponce was not assigned to
9 the third floor where both plaintiff and inmate Winn were housed.  On February 5, 2006,
10 defendant Ponce responded to defendant Rowe's call for officer assistance.  Within minutes,
11 however, defendant Ponce returned to his assignment because the situation between plaintiff and
12 inmate Winn was under control.  (Defs.' SUDF 33-35, Ponce Decl.)
13  Prior to February 5, 2006, defendant Ponce had no knowledge of plaintiff or
14 inmate Winn.  In addition, defendant Ponce had no knowledge of any previous altercations
15 between plaintiff and inmate Winn or whether inmate Winn had previously caused plaintiff or
16 any other prisoner bodily harm.  Defendant Ponce also had not made any housing or
17 classification decisions, implemented any housing or classification changes, or have knowledge
18 thereof, regarding either plaintiff or inmate Winn.  (Defs.' SUDF 36-37, Ponce Decl.)
19  In January and February of 2006, defendant Ramos was assigned to the fourth,
20 fifth, and sixth floors of the jail.  Defendant Ramos was not assigned to the third floor where
21 both plaintiff and inmate Winn were housed.  On February 5, 2006, defendant Ramos responded
22 to defendant Rowe's call for officer assistance.  Defendant Ramos did not assist in controlling
23 the altercation between plaintiff and inmate Winn because other officers had diffused the
24 situation by the time he arrived on the scene.  (Defs.' SUDF 38-40, Ramos Decl.)
25  Prior to February 5, 2006, defendant Ramos had no knowledge of plaintiff or
26 inmate Winn.  In addition, defendant Ramos had no knowledge of any previous altercations

8

between plaintiff and inmate Winn or whether inmate Winn had previously caused plaintiff or any other prisoner bodily harm. Defendant Ramos also had not made any housing or classification decisions, implemented any housing or classification changes, or have knowledge thereof, regarding either plaintiff or inmate Winn. (Defs.' SUDF 41-42, Ponce Decl.)

In January and February of 2006, defendant Millican was a supervising sergeant assigned to the second, third, and fourth floors and the kitchen of the jail. He worked the night shift from 7 p.m. to 7 a.m. Defendant Millican reviewed the incident report regarding the altercation between plaintiff and inmate Winn on January 3, 2006, and was aware of the referral of inmate Winn to classification for rehousing to a different location of the jail on the same day. According to the incident report, both plaintiff and inmate Winn declined medical care at the time of the January 3, 2006 incident and neither inmate wanted to press charges against the other. On January 4, 2004, at approximately 12:30 a.m., inmate Winn moved to a different floor of the jail. (Defs.' SUDF 43-46, Millican Decl. & Exs. A-C, L.)

On February 3, 2006, inmate Winn was returned to the third floor at approximately 11:30 p.m. Defendant Millican was not working on that day and was not aware that inmate Winn had been moved back to the third floor. On February 5, 2006, at approximately 6:30 p.m., defendant Millican returned to work. By that time, the second altercation between plaintiff and inmate Winn was over, and plaintiff had moved from the third floor to a different part of the jail. Defendant Millican reviewed the incident report prepared by defendant Rowe regarding the altercation and approved it as prepared. The report indicated that both inmates declined medical treatment and did not wish to press charges against the other. (Defs.' SUDF 47-53, Millican Decl. & Exs. B, D-G, L.)

Although defendant Millican had knowledge of the January 3, 2006 incident between plaintiff and inmate Winn, and of inmate Winn's transfer to another housing location, defendant Millican did not have knowledge of inmate Winn's return to the same floor as plaintiff on February 3, 2006, until he returned to work on February 5, 2006, after the second altercation

between the two inmates and after plaintiff had moved to another housing location. (Defs.' SUDF 54, Millican Decl. & Exs. E-G.)

II. Defendants' Arguments

Defense counsel argues that plaintiff failed to exhaust his administrative remedies prior to filing suit. According to the Sacramento County Main Jail Inmate Handbook and the grievance forms used by the Sacramento County Main Jail, a three-level appeals process exists to address inmate complaints regarding conditions of confinement. Counsel contends that plaintiff filed grievances concerning his first altercation with inmate Winn, but he failed to pursue the grievances through the three-level appeals process. In addition, counsel contends that plaintiff did not file any grievances regarding his second altercation with inmate Winn. Accordingly, defense counsel concludes that plaintiff's complaint must be dismissed for failure to exhaust administrative remedies. (Defs.' Revised Mem. of P. & A. at 9-12.)

Defense counsel also argues that there is no evidence that any of the defendants named in this action were deliberately indifferent to plaintiff's safety. Specifically, counsel contends that none of the defendants knew of any risk of harm facing plaintiff on February 5, 2006. Defense counsel acknowledges that defendant Millican was aware of plaintiff's first altercation with inmate Winn. However, defendant Millican was not on duty or aware of inmate Winn's return to the third floor on February 3, 2006. In fact, defendant Millican did not return to duty until after plaintiff's second altercation with inmate Winn and after plaintiff had been moved to another housing location. Accordingly, defense counsel concludes that all of the defendants are entitled to summary judgment in their favor with respect to plaintiff's Eighth Amendment claims. (Defs.' Revised Mem. of P. & A. at 12-14.)

III. Plaintiff's Opposition

Plaintiff's opposition to defendant's motion for summary judgment is supported by a statement of disputed facts and a memorandum of points and authorities. In the latter plaintiff argues that he has exhausted administrative remedies. In this regard, he contends that he

10

spoke to officers after his first altercation with inmate Winn, thereby satisfying the informal level of appeal. He also contends that he turned in a grievance to a deputy on January 8, 2006, and subsequently appealed to the Jail Commander on January 11, 2006, thereby satisfying the second and third levels of administrative appeal. (Pl.'s Mem. of P. & A. at 7.)

Plaintiff also argues that the defendants should have prevented inmate Winn's return to the third floor in February 2006. Plaintiff acknowledges that officers transferred inmate Winn after their first altercation. However, plaintiff argues that returning inmate Winn back to his floor was a clear violation of his constitutional rights. Plaintiff also argues that defendants should have provided him with medical care after his first altercation with inmate Winn. Plaintiff contends that, because he had no visible injuries, deputies told him he did not need medical care. However, according to plaintiff, inmate Winn weighs more than 300 pounds. Plaintiff weighs only 125 pounds. Plaintiff contends that a blow from inmate Winn would result in obvious harm to him, but rather than arguing with the deputies, plaintiff waited to sign up for sick call six days later. (Pl.'s Mem. of P. & A. at 9-10.)

IV.  Defendants' Reply

In reply, defense counsel reiterates that plaintiff failed to exhaust administrative remedies. Specifically, counsel contends that plaintiff failed to pursue his grievance regarding his first altercation with inmate Winn through the administrative appeal process all the way to the Facility Commander. In addition, counsel contends that plaintiff never filed a grievance regarding his second altercation with inmate Winn. (Defs.' Reply at 1-3.)

Defense counsel also argues that plaintiff has failed to provide any evidence to show that defendants knew of and disregarded an excessive risk to his health or safety. Counsel contends that none of the defendants had any involvement with inmate Winn's return to the third floor on February 3, 2006. Although defendant Millican had previously reviewed the crime report regarding plaintiff and inmate Winn's first altercation, he was not on duty when inmate Winn was returned to the third floor. In addition, according to counsel, none of the defendants

had any involvement with delaying, denying, or otherwise acting deliberately indifferent to plaintiff's medical needs. Accordingly, defense counsel concludes that defendants are entitled to summary judgment. (Defs.' Reply at 3-5.)

## ANALYSIS

Defendants are entitled to summary judgment on the merits of plaintiff's Eighth Amendment claims. The court finds that defendants have borne their initial burden of demonstrating that there is no genuine issue of material fact with respect to the adequacy of protection they provided plaintiff in January and February of 2006. The evidence before the court establishes the following. On January 3, 2006, plaintiff's cellmate inmate Winn assaulted him one time. As a result of inmate Winn's behavior, he was transferred off of the third floor to a different housing location in the jail. Defendant Millican reviewed the crime report regarding the assault and was aware of inmate Winn's transfer off of the third floor.

On February 3, 2006, inmate Winn was returned to the third floor of the jail and assaulted plaintiff a second time. Defendant Rowe observed that altercation and called for additional officers to report to the day room. Defendants Frank, Ponce, and Ramos responded to defendant Rowe's call, but their assistance was not needed because other officers had the situation under control upon their arrival. Defendants Rowe, Frank, Ponce, and Ramos were not aware of any previous altercations between plaintiff and inmate Winn and were not aware of whether inmate Winn had previously caused bodily harm to plaintiff or any other prisoner. In addition, defendants Rowe, Frank, Ponce, and Ramos had not made any housing or classification decisions, implemented any housing or classification changes, or have knowledge thereof, regarding either plaintiff or inmate Winn. Although defendant Millican had previously reviewed the crime report regarding inmate Winn's first assault on plaintiff, defendant Millican was not aware that inmate Winn was returning to the third floor on February 3, 2006. It is undisputed that defendant Millican was not on duty on February 3, 2006, and did not return to duty until

/////

February 5, 2006, at approximately 6:30 p.m., after inmate Winn's second assault on plaintiff and after plaintiff had been transferred off of the third floor.

Based on this evidence, the court finds that the defendants named in this action did not know of any substantial risk of serious harm to plaintiff health or safety. Nor did they disregard such a risk by failing to take reasonable steps to abate it. Farmer, 511 U.S. at 847. Thus, the burden shifts to plaintiff to establish the existence of a genuine issue of material fact precluding summary judgment in defendants' favor.

The court has considered plaintiff's opposition to the pending motion for summary judgement as well as the allegations of his complaint. The undersigned finds that plaintiff has failed to submit any evidence establishing a legitimate dispute as to any genuine issue of material fact. Plaintiff argues that defendants should have prevented inmate Winn's return to the third floor. However, there is no evidence that any of the named defendants were aware that inmate Winn was being moved back to the third floor of the jail or that any of the defendants, except defendant Millican, knew or should have known that inmate Winn may have posed a threat to plaintiff. Moreover, where defendant Millican is concerned, the uncontroverted evidence is that he was not on duty on February 3, 2006, and did not return to duty until February 5, 2006. Defendant Millican was not aware that inmate Winn had been moved back to the third floor of the jail until after inmate Winn's second assault on plaintiff had already occurred and after plaintiff had transferred off of the third floor to other housing in the jail.

Under these circumstances, no reasonable fact finder could conclude that any of the named defendants knew or should have known of a substantial risk of serious harm to plaintiff and disregarded that risk. See Farmer, 511 U.S. at 844 ("prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment"); Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading. . . ."). Accordingly, for the reasons set forth
/////

above, the court concludes that the defendants are entitled to summary judgment in their favor on plaintiff's Eighth Amendment claims.[1]

**OTHER MATTERS**

In his opposition to defendants' motion for summary judgment, plaintiff summarily argues that defendants failed to provide him with adequate medical care in violation of the Eighth Amendment. (Pl.'s SDF 4, Pl.'s Mem. of P. & A. at 10.) Plaintiff is advised that an opposition to a motion for summary judgment is not a proper vehicle for adding new claims to his complaint. If plaintiff wished to proceed on such a claim, he needed to file a motion for leave to amend, together with a proposed third amended complaint. Liberally construed, plaintiff's second amended complaint fails to state any factual basis for a claim challenging the constitutional adequacy of his medical care. See Estelle v. Gamble, 429 U.S. 97 (1976).

Plaintiff also briefly suggests in his opposition to the pending motion that the court should postpone ruling on defendants' motion until he has an opportunity to review inmate Winn's disciplinary records. Plaintiff surmises that inmate Winn's records will demonstrate that he engaged in prior misconduct and violent behavior and posed a potential risk of harm. (Pl.'s Mem. of P. & A. at 1.) In defendants' reply, defense counsel argues that the court should not delay ruling on the pending motion because plaintiff never sought an order from this court compelling the release of inmate Winn's records, nor has plaintiff sought and received permission from inmate Winn for copies or his records. (Defs.' Reply at 2.)

To the extent that plaintiff's suggestion can be construed as seeking relief under Rule 56(f) of the Federal Rules of Civil Procedure, he has failed to submit an affidavit or demonstrate in any way that there are specific facts he hopes to discover that could raise an issue of material fact in this case. Harris v. Duty Free Shoppers Ltd. P'ship, 940 F.2d 1272, 1276 (9th

---

[1] In light of the court's findings and recommendations on the merits of plaintiff's Eighth Amendment claims, the court declines to address defendants' argument that plaintiff failed to exhaust administrative remedies prior to filing suit. In addition, because it is unnecessary to do so, the court declines to address defendants' objections to plaintiff's statement of disputed facts.

Cir. 1991); Carpenter v. Universal Star Shipping, S.A., 924 F.2d 1539, 1547 (9th Cir. 1991). "The burden is on the party seeking to conduct additional discovery to put forth sufficient facts to show that the evidence sought exists." Volk v. D.A. Davidson & Co., 816 F.2d 1406, 1416 (9th Cir. 1987). See also Hancock v. Montgomery Ward Long Term Disability Trust, 787 F.2d 1302, 1306 n.1 (9th Cir. 1986) (holding that the party opposing summary judgment "has the burden under Rule 56(f) to show what facts [he] hopes to discover to raise an issue of material fact"). Here, plaintiff has failed to submit a proper request or make the requisite showing that he is entitled to relief under Rule 56(f).

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendants' September 15, 2008 motion for summary judgment (Doc. No. 54) be granted; and

2. This action be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 18, 2009.

/s/ Dale A. Drozd
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:9
jeff0299.57